IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 19-42 |
| ADAM HOSIE | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

AND NOW comes the United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, and Heidi M. Grogan, Assistant United States Attorney for said District, and respectfully files the following Memorandum in Aid of Sentencing:

Upon consideration of all of the factors set forth in Title 18, United States Code, Section 3553(a), the government urges the Court to sentence defendant Hosie to a term of imprisonment within the guideline range given defendant's demonstrated sexual interest in young children as demonstrated by: 1) the defendant's significant and graphic collection of and search for child pornography; and 2) the defendant's own words and actions.

The Court is required to give "meaningful consideration" to all of the relevant Section 3553(a) factors. *Gall v. United States*, 552 U.S. 38 (2007); *United States v. Larkin*, 629 F.3d 177, 197 (3d Cir. 2010); *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006). However, the Court need not discuss each factor if the record makes clear that the Court took all relevant factors into account in imposing sentence. *United States v. Thornhill*, 759 F.3d 299 (3d Cir. 2014); *Cooper*, *supra*, 437 F.3d 329.

I. **FACTUAL AND PROCEDURAL CONTEXT**

Adam Hosie, the defendant, has pleaded guilty to a one-count federal Indictment that

charged him with Possession of Material Depicting the Sexual Exploitation of a Minor, in violation of Title 18, United States Code, Sections 2252(a)(4)(B) and 2252(b)(2).  As alleged in the Indictment, the images possessed by the defendant "depict prepubescent minors and minors who have not attained 12 years of age, engaging in sexually explicit conduct."  Given the young age of the minors depicted, the maximum term of imprisonment for the defendant is increased from 10 years to 20 years' imprisonment.   18 U.S.C. § 2252(b)(2).

In his plea agreement, which was detailed on the record at the change of plea hearing on September 19, 2019, the defendant stipulated that the following sentencing enhancements are applicable based upon the facts and evidence supporting the charge:

   a. that the base offense level should be raised by two levels pursuant to § 2G2.2(b)(2) because the images involved prepubescent minors;

   b. that the base offense level should be raised by two levels under § 2G2.2 (b)(3)(F) because the defendant knowingly engaged in the distribution of images;

   c. that the base offense level should be increased by four levels because depictions of sadistic or masochistic conduct or the sexual abuse or exploitation of an infant or toddler was involved;

   d. that the base offense level should be raised by two levels under § 2G2.2(b)(6) because a computer was used to commit the offense; and

   e. that the base offense level should be increased by five levels under § 2G2.2(b)(7)(D) because the defendant possessed at least 600 images.

Law enforcement became aware of this defendant's criminal conduct when a detective with the Indiana County District Attorney's office connected to the Internet in an undercover capacity

to investigate the sharing of child pornography via the Internet, specifically the sharing of child pornography utilizing the BitTorrent Peer-to-Peer (P2P) file sharing network. The detective was able to download at least one file which the detective identified as a video depicting child pornography (the image depicted the sexual exploitation of a toddler and other children) from an IP address that resolved to the residence of the defendant in Freedom, Pennsylvania.

Defendant affirmed his conduct during an interview at the time the search warrant was executed. When investigators explained that the reason for the search involved the sharing of child pornography, Mr. Hosie stated that he knew why law enforcement was at his house, and he further stated that he did download child pornography and had been doing so for a number of years, since he was in high school. Mr. Hosie affirmed to law enforcement that he used a number of torrent sites to download child pornography, although he thought that he configured the torrents to not be shared. Hosie also admitted to using a known term "PTHC" or "preteen hard core" to search for child pornography.

During the forensic review of Hosie's laptop computer, investigators discovered over one hundred videos of child pornography in the user's "downloads" folder and in excess of 400 images of child pornography. Some of these images and videos contained child pornography featuring bondage and beastiality. Peer-to-peer sharing software was discovered on the computer. A review of the internet history revealed user searches indicative of a sexual interest in children, including searches for "underage sex"; "pthc boy images"; and "11yo blow job." Contrary to the assertion that defendant began downloading pornography and/or child pornography around January 2018, the forensic review shows internet searches by defendant that are indicative of a sexual interest in children and which date as far back as 2013 (e.g., 11-15-2013 - primejailbait.com

3

(multiple searches); as well as: 2-15-2014 "molesting" at motherless.com; 11-21-2015 – search at mommyfucker.com for "hot-mommy--xxxxxxx-xxxx-sucks-her-sons-dick"; 4-5-2016 – Bing video search for "little girl age play"; 6-12-2016 search for "gothic lolitas"; 11-19-2016; 7-7-2018 – search on motherless.com for "yng_n_fun_cpl").

## II. CONSIDERATION OF THE 3553(a) FACTORS

### a. The Nature and Circumstances of the Offense (§ 3553(a)(1))

It is beyond dispute that the sexual exploitation of minors is a very serious crime. In his plea agreement with the government, the defendant concurred that the final offense level is 30. With a Criminal History category of I, the resulting guideline imprisonment range is 97 – 121 months' imprisonment.

Congress has explicitly recognized that child pornography offenses are "crimes of violence." See 18 U.S.C. § 3156. "An offender's pornography and erotica collection is the single best indicator of what he wants to do." KENNETH V. LANNING, OFFICE OF JUVENILE JUSTICE AND DELINQUENCY PREVENTION, CHILD MOLESTERS: A BEHAVIORAL ANALYSIS–FOR PROFESSIONALS INVESTIGATING THE SEXUAL EXPLOITATION OF CHILDREN, 107 (5TH ED. 2010).

Using children to produce graphic, sexual images is a form of sexual abuse which can cause mental and physical harm to a child. *United States v. Champion*, 248 F.2d 502, 506 (6th Cir. 2001). "The 'victimization' of the children involved does not end when the camera is put away." *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998). The consumer of child pornography contributes to the harm to victims who are the subject of child pornography: (1) the abuse is perpetuated through instantaneous and world-wide dissemination, (2) the existence of the image is a permanent violation of the child's privacy, and (3) the demand for the creation of more images

is fueled by the consumer. *Norris*, 159 F.3d at 929-30. Consumers of child pornography, whether or not they are involved in production, contribute to the cycle of abuse and are in part responsible for the psychological and physical harm of the children used to produce the images. *United States v. Yeaple*, 605 F. Supp. 85, 86 (M.D. Pa. 1985); *see also*, *United States v. Ferber*, 458 U.S. 747, 759 (1982).

Mr. Hosie's collection of child pornography was extensive and graphic. Mr. Hosie's post-arrest admissions corroborate the forensic evidence in this case and indicate that Mr. Hosie has been collecting and sharing child pornography for many years, demonstrating his intent and sexual interest in children.

The impact of this crime on its child victims is profound and long-lasting. All of Mr. Hosie's files of apparent child pornography were submitted to the National Center for Missing and Exploited Children (NCMEC) for comparison to the Child Victim Identification Program database. In response, NCMEC reported that, of the files submitted, 133 images and videos depicted known, identified victims, with 13 series or known victims identified. The known child victims were from six different States, as well as Spain, Moldova, the United Kingdom, Germany, and Russia.

b. **History and Characteristics of the Defendant (§ 3553(a)(1))**

Mr. Hosie has had tragic experiences in his lifetime that he is just coming to terms with. Those events, coupled with Mr. Hosie's apparent close family relationships, employment history, minimal criminal history, and cooperation with law enforcement, weigh in his favor. The government notes that in the "vast majority" of child pornography possession cases, defendants

come before the court without a prior criminal history or as a Criminal History Category I.   *United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007).

      **c. Seriousness of the Offense, Respect for the Law, Just Punishment   (§ 3553(a)(2)(A))**

The law is clear that child pornography crimes warrant stringent sentences.   The Court of Appeals for the Third Circuit has expressed disapproval of extremely lenient, below guideline range sentences in these cases.   In *United States v. Goff*, 501 F.3d 250 (3d Cir. 2007), the district court sentenced a child pornography defendant to four months of imprisonment, even though the applicable guideline range was 37 to 46 months.   The Third Circuit vacated the sentence and remanded for sentencing, holding that such a lenient sentence was unreasonable.   *Id.* at 262.   The court reasoned that the district court gave short shrift to the Sentencing Guidelines and did not properly consider a variety of 3553 factors.   Goff downplayed the seriousness of the offense by implying that it was a victimless crime, which was a solitary, private activity driven by his curiosity of the subject.   The Third Circuit rejected these claims as follows:

> Children are exploited, molested, and raped for the prurient pleasure of Goff and others who support suppliers of child pornography. These small victims may rank as no one else in Goff's mind, but they do indeed exist outside his mind. Their injuries and the taking of their innocence are far too real. There is nothing casual or theoretical about the scars they will bear from being abused for Goff's advantage. Far from persuading us that Goff's crime was relatively minor, his efforts to downplay the harm his actions have inflicted on others serve chiefly to highlight the concern the District Court should have had with Goff's failure to appreciate the seriousness of the offense.

*Id.* at 258-59.   Goff also argued that he was entitled to a downward departure/variance because he never acted out in any sexual way with children.   *Id.* at 259.   The Third Circuit dispatched this assertion:

> He was not charged with molestation, so pointing out that he hadn't committed it is, in one sense irrelevant. In another more important sense, however, it does say something meaningful, albeit not what the defense intended. While the defense effort to draw a spectator-vs-participant distinction does not show that Goff's pornography crime was of less than ordinary severity, it does reemphasize that Goff failed to fully appreciate that severity. The simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials.

*Id.* The Court criticized the district court's reliance upon Goff's lack of criminal history because many child pornography defendants are first time offenders. *Id.* at 260-61 (citing *United States v. Grinbergs*, 470 F.3d 758, 761 (8th Cir.2006) (the district court erred when it deemed an offense "atypical simply because the defendant had not committed other crimes.")).

### d. Deterrence (§ 3553(a)(2)(B))

Deterring the sexual exploitation of minors must be given significant weight at sentencing—children are the most defenseless members of our society and exploiting a child's innocence by possessing child pornography is an egregious crime. Practically speaking, severe criminal penalties for those who commit crimes exploiting children is critical to drying up the market and decreasing demand for material that exploits children. *See Goff*, 501 F.3d at 261 & (reversing the district court and stating: "The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it, and so the more it will be produced. . . . deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing . . . ."). Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *See United States v. Ferber*, 458 U.S. 747, 760 (1982) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by

imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand").

Thus, this factor includes the deterrence of the defendant in the instant case, as well as those who many consider similar offenses in the future.

### e. Protect the Public (§ 3553(a)(2)(C))

Recent research focused on federal offenders published in the Journal of Sexual Aggression underscores the grave risk that crimes like possession and distribution of child pornography pose to children. The lack of physical contact in these offenses has fostered a frequent, erroneous assumption that "these offenders are somehow distinct from child molesters (i.e., 'hands-on' abusers)" and therefore not deserving of guideline sentences. M.L. Bourke, et. al., *The Use of Tactical Polygraph with Sex Offenders*, J. of Sexual Aggression 1, 5 (2014). (The authors are of this article were exclusively federal researchers or investigators, from the U.S. Marshals Service, FBI, U.S. Postal Inspection Service, U.S. Secret Service and U.S. Attorney's Office).

Significantly, in a sample of 127 suspects with no known history of hands-on offending, only 4.7% admitted sexually offending against at least one child victim. During polygraph, an additional 52.8% of the men tested disclosed hands-on sexual abuse. *Id.* at 17. The researchers drew the following conclusions from their work: 1) researchers, treatment providers and legal officials should avoid placing offenders into groups labeled as "hands-off" based on the absence of such crimes in their criminal histories; 2) the study affirmed extant research that child pornography offenders are sexually attracted to children, and that a large percentage of these

8

individuals have victimized at least one child via an act of hands-on sexual abuse; 3) "significant crossover" exists between contact and non-contact child exploitation because of the shared motivational pathway – sexual interest in children.  *Id.* at 11, 20-21.

Mr. Hosie's criminal conduct in this case demonstrates explicit sexual interest in prepubescent children, making him a danger to children.   In a study published by Michael C. Seto, James Cantor, and Ray Blanchard, the researchers concluded that "as a group, child pornography offenders showed <u>greater</u> sexual arousal to children than to adults and differed from groups of sex offenders against children, sex offenders against adults, and general sexology patients.  The results suggest child pornography offending is a stronger diagnostic indicator of pedophilia than is sexually offending against child victims."   Seto, Cantor and Blanchard, "Child Pornography Offenses are a Valid Indicator of Pedophilia," Journal of Abnormal Psychology, Volume 115 (2006).

### f.  Need to Avoid Sentencing Disparity (§ 3553(a)(6))

Mr. Hosie has committed serious child pornography crimes in a manner that triggered several fact-based enhancements.  "Sentencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly.   That was the main goal of the Sentencing Reform Act.   The more out-of-range sentences that judges impose . . .the more disparity there will be."   *United States v. Shrake*, 515 F.3d 743, 748 (7th Cir. 2008).

### III.  RESTITUTION

To date, of the identified victims in this case, only one has requested restitution. Defendant has reached an agreement with the victim of the "Tara" Series to pay $2000.00 in

restitution. Should other victims come forward with restitution requests, the government will notify the Court and Probation.

## IV. CONCLUSION

For all of the foregoing reasons, the government submits that this Court should conclude that a sentence within the guideline range is warranted, provides just punishment, and is not greater than necessary to address defendant's crimes and the factors set forth at 18 U.S.C. § 3553(a).

    Respectfully submitted,

    SCOTT W. BRADY
    United States Attorney

    s/ Heidi M. Grogan
    HEIDI M. GROGAN
    Assistant United States Attorney
    PA ID No. 203184